UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DONALD MELENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:05-1178 |
| | ) | |
| v. | ) | |
| | ) | **FINDINGS OF FACT AND** |
| ANTHONY MOON, et al., | ) | **CONCLUSIONS OF LAW** |
| | ) | |
| Defendants. | ) | |

\*\*    \*\*    \*\*    \*\*    \*\*

This matter came on for bench trial on April 13, 2010 before
the undersigned.  The issues remaining for trial were Plaintiff's
claims of excessive force and deliberate indifference to his
medical needs.  Having heard and considered the evidence, the Court
makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.  On April 21, 2005, at approximately 10:13 p.m., the City
of Hudson Police Department received a call reporting that
Plaintiff Donald Melendez ("Plaintiff") was intoxicated and driving
a white truck toward Hudson.

2.  Defendants Sergeant Anthony Moon and Officer Randy Clarke
were dispatched to intercept Plaintiff who was reportedly operating
his vehicle on Warren Street in Hudson.

3.  Upon arriving at the scene in a City of Hudson Police
Department marked police cruiser with the emergency lights
activated, Sgt. Moon and Ofcr. Clarke observed an individual who
was later identified as Plaintiff seated in a white pick-up truck

which had been driven onto the curb at an angle and appeared to have struck a light post.

4.   Sgt. Moon approached the driver's side of the truck, recognized the individual inside as Plaintiff Donald Melendez, and requested that he produce his license and registration.

5.   Ofcr. Rowe of the City of Hudson Police Department also arrived on the scene and positioned his police cruiser such that the video camera inside could record the events surrounding Plaintiff's arrest.  Portions of the events surrounding Plaintiff's arrest were also recorded using an audio recording device in Ofcr. Rowe's police cruiser.

6.   At Sgt. Moon's request, Plaintiff exited the vehicle and was escorted to the sidewalk where Sgt. Moon administered a field sobriety test.

7.   During the field sobriety test, Plaintiff can be heard threatening to sue the officers.

8.   Upon determining that Plaintiff failed the field sobriety tests, Sgt. Moon placed Plaintiff under arrest for driving while intoxicated.   Ofcr. Clarke assisted Sgt. Moon in placing Plaintiff's hands in handcuffs behind his back.  Plaintiff was then escorted toward Sgt. Moon's police cruiser.

9.   Plaintiff admitted that as of this time, he had not been injured.

10.   At this point, Plaintiff was escorted to Sgt. Moon's

-2-

police cruiser.  The video recorder continued to be focused on the sidewalk where the field sobriety tests took place, not on Sgt. Moon's cruiser.

11.  Through the audio recording, Plaintiff can be heard screaming.  Though Plaintiff testified that his screams were caused by Sgt. Moon and Ofcr. Clarke causing him to fall to the ground and assaulting him, Sgt. Moon testified that Plaintiff began screaming after he lunged forward and threw his own head into the tailgate of the pick-up truck he had been driving.

12.  Because Sgt. Moon's testimony is corroborated by the audio recording wherein we hear the officers repeatedly telling Plaintiff to "stop," "stop it," and "knock it off," the Court finds Sgt. Moon's testimony to be more credible than Plaintiff's.

13.  Plaintiff resisted Sgt. Moon and Ofcr. Clarke's attempts to place him in the police cruiser, as evidenced by the officers' voices on the audio recording telling Plaintiff to "stop resisting and get in."

14.  Sgt. Moon and Ofcr. Clarke were eventually able to place Plaintiff in the backseat of the cruiser.

15.  While audio recording ceased at this point, the video camera was then focused on Plaintiff in the backseat of the cruiser.

16.  Shortly after being placed in the backseat of the cruiser, Plaintiff violently slammed the right side of his head and

face into the passenger side door frame of the cruiser three times in quick succession.  Plaintiff exerted so much force in slamming his own head into the vehicle that he caused the vehicle to rock from side to side.

17.   In an effort to prevent Plaintiff from further injuring himself, Sgt. Moon opened the rear passenger door of the cruiser and grabbed the front of Plaintiff's shirt.

18.   Plaintiff lunged at Sgt. Moon, head-butting him.

19.   In order to gain control over Plaintiff and prevent him from injuring himself and the officers, Sgt. Moon then pushed Plaintiff into a prone position on the rear seat.

20.   Ofcr. Clarke entered the cruiser through the rear driver's side door to assist Sgt. Moon in controlling Plaintiff, and can seen making a pumping motion with his right arm.

21.   While Plaintiff testified that this motion was Ofcr. Clarke punching him, the Court finds Ofcr. Clarke's testimony that he was merely engaging in the routine practice of pulling the shoulder portion of the seatbelt completely out of its housing and wrapping it around Plaintiff in an attempt to secure him to be more credible.  Ofcr. Clarke's arm motion is more consistent with a pulling action, as opposed to a punching action.

22.   After Ofcr. Clarke attempted to secure Plaintiff with the shoulder belt, both officers exited the cruiser and closed the doors.

23.  A short time after the officers closed the cruiser doors, Plaintiff could be seen sitting up in the backseat of the cruiser.

24.  While, at trial, Plaintiff claims to have been assaulted by both Sgt. Moon and Ofcr. Clarke, in his prior deposition testimony, Plaintiff stated that he was assaulted by only Ofcr. Clarke.  During cross-examination, Plaintiff admitted that only upon viewing the video of the arrest did he allege that he was assaulted by Sgt. Moon.  Plaintiff's inconsistent allegations, along with his statement during the field sobriety test that he was going to sue the arresting officers, casts grave doubt on Plaintiff's credibility.

25.  While engaging in the above-detailed efforts to restrain Plaintiff and prevent him from injuring himself and others, Sgt. Moon and Ofcr. Clarke may have roughly handled Plaintiff, but used only enough force as was reasonable and necessary, never punching or striking Plaintiff.

26.  Plaintiff was transported to the Hudson Police Station and refused to exit the police cruiser, causing Sgt. Moon and Ofcr. Clarke to physically remove him from the vehicle.

27.  Once removed from the vehicle, Plaintiff refused to stand, so the officers laid him on the floor while they searched the rear seat of the cruiser.

28.  While lying on the garage floor at the Hudson Police Department, Plaintiff began slamming the right side of his head

against the concrete floor while saying "stop hitting me."

29.  In an effort to prevent Plaintiff from further injuring himself, Ofcr. Clarke placed his hand between Plaintiff's head and the concrete floor.

30.  Plaintiff was placed in a holding cell and continued his attempts to injure himself, including slamming his head against a wall.

31.  Plaintiff was arraigned in City Court at approximately 2:30 a.m., at which time he was remanded to the custody of the Columbia County Sheriff.

32.  Plaintiff was subsequently convicted of a violation of New York State V&T Law §§ 1192(3) and 1193, a D felony; Aggravated Unlicensed Operation of a Vehicle in the first degree, an E felony; and Resisting Arrest, an A misdemeanor.

33.  Plaintiff claimed to have suffered a broken right jaw as a result of the alleged assaults by Sgt. Moon and Ofcr. Clarke.

34.  Dr. Curran, an emergency room physician at Columbia Memorial Hospital who examined Plaintiff on April 22, 2005, diagnosed Plaintiff with a broken right jaw and discharged him with pain medication and directions to see an Ear, Nose and Throat doctor for follow-up treatment.

35.  Medical records indicate that Plaintiff had previously suffered a broken right jaw in June of 2003 as a result of being hit in the face with a pipe.

36.   A CT scan of Plaintiff's right jaw shows only one fracture.   Dr. Curran testified that this could result from the fracture being at the same location as the fracture of 2003.[1]

### CONCLUSIONS OF LAW

37.   To prevail on his § 1983 claims, Plaintiff must establish that a person acting under color of state law deprived him of a federal right.   42 U.S.C. § 1983.

38.   It is well established that the use of excessive force in the course of an arrest is constitutionally prohibited. *Mickle v. Morton*, 297 F.3d 114 (2d Cir. 2002).

39.   To establish that a defendant used excessive force, a court must look to whether the defendant's actions were "objectively reasonable" under Fourth Amendment standards, considering such factors as: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the officers or others; and 3) whether the suspect resisted or attempted to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

40.   In determining whether excessive force was used, the Court should "adopt a perspective of a reasonable officer on the

---

[1]   At the close of Plaintiff's evidence, Defendants moved for a judgment on partial findings pursuant to Fed. R. Civ. P. 52(c). The Court dismissed Plaintiff's deliberate indifference claim for the reasons outlined in the transcript of the hearing.  Similarly, the Court dismissed the excessive force claim against Defendant Rowe.

scene of the arrest," and must be mindful that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*

41.   Here, there is no question that Defendants were acting under color of state law in their official capacities as City of Hudson police officers at the time of Plaintiff's arrest.

42.   During the course of his arrest, Plaintiff engaged in the following conduct which had the potential of injuring himself and the officers: lunging from Sgt. Moon and slamming his own head into the pick-up truck as Sgt. Moon escorted him to the police cruiser; resisting the officers' attempts to place him in the rear of the cruiser; slamming the right side of his head into the frame of the cruiser several times; lunging at and head-butting Sgt. Moon when he attempted to prevent Plaintiff from further injuring himself.

43.   The video recording clearly demonstrates that neither Sgt. Moon nor Ofcr. Clarke used excessive force in arresting or restraining Plaintiff.   The limited amount of force used was reasonable and necessary to protect Plaintiff from himself, and to protect the arresting officers from Plaintiff.

44.   Furthermore, Plaintiff has failed to come forward with any evidence that would eliminate his own conduct of slamming his head into a pick-up truck, the door frame of the police cruiser, and the garage floor of the Hudson Police Department as the cause of any jaw injuries he sustained the evening of his arrest.   Based

upon the weight of the evidence submitted at trial, Plaintiff's injury was self-inflicted.

45.    Any force used by Sgt. Moon and Ofcr. Clarke during the course of Plaintiff's arrest was objectively reasonable, necessary, and appropriate under the circumstances.

46.    Accordingly, judgment shall be entered in favor of Defendants on Plaintiff's claim that he was subjected to excessive force in violation of his Fourth Amendment right.

This the 9th day of June, 2010.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge

Sitting by designation

-9-